UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DENNIS JAMES KINCADE,

               Petitioner,

v.                                     CASE NO. 04-CV-72599-DT
                                     HONORABLE GEORGE CARAM STEEH

HUGH WOLFENBARGER,

               Respondent.

_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

This matter is pending before the Court on petitioner Dennis James Kincade's application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state convictions for first-degree murder and possession of a firearm during the commission of a felony (felony firearm). The Court has reviewed the record and determined that Petitioner's claims do not warrant granting the writ of habeas corpus. Therefore, the habeas petition will be denied.

### I. Background

Petitioner was charged in Wayne County, Michigan with first-degree murder, assault with intent to commit murder, and felony firearm. The charges arose from a shooting in Detroit on November 7, 1984. The testimony at trial established that Petitioner and Glenn Thomas approached Kevin Taylor and Carl Branham on Helen Street. Petitioner fired a gun at Kevin Taylor, who died from gunshot wounds, one to the chest and one to the abdomen. Carl Branham escaped injury despite the fact that Petitioner fired additional gunshots as Branham ran away. The prosecutor's theory was that Petitioner intended to shoot and kill Carl Branham, either

because he was hired to kill Branham or because Branham witnessed him shoot Taylor.

Glenn Thomas also was charged with the murder and assault. He pleaded guilty to a lesser charge and agreed to testify against Petitioner. Both Thomas and Carl Branham testified that the decedent was not armed and did not threaten Petitioner or gesture with his hands immediately before the shooting.

Petitioner was the only defense witness. He admitted shooting Kevin Taylor, but he claimed that he fired in self defense because he thought Taylor was reaching for a gun when he raised his hand. On July 23, 1985, the jury acquitted Petitioner of the assault charge, but found him guilty of first-degree murder, Mich. Comp. Laws § 750.316, and felony firearm, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a consecutive term of life imprisonment without the possibility of parole for the murder.

Petitioner appealed his convictions and was granted a remand so that he could file a motion for new trial and seek an evidentiary hearing on a claim of ineffective assistance of trial counsel. He and his attorney subsequently decided not to pursue the ineffectiveness claim. Instead, they alleged that it was error to admit Glenn Thomas's guilty plea in evidence. On August 3, 1987, two judges of a three-judge panel affirmed Petitioner's convictions in a published opinion. *See People v. Kincade*, 162 Mich. App. 80; 412 N.W.2d 252 (1987). The majority held that, although an accomplice's guilty plea generally may not be used as substantive evidence at a defendant's trial, the prosecutor used Glenn Thomas's guilty plea to refute Petitioner's theory of self defense and not as substantive evidence of Petitioner's guilt. The dissenting judge voted to reverse Petitioner's conviction on the basis that self defense goes to the

heart of an alleged criminal act and, therefore, any evidence which negates self defense is substantive.

Petitioner did not appeal the court of appeals decision to the Michigan Supreme Court. He did file two *pro se* motions for a new trial, which the trial court denied. On appellate review of the trial court's denial of the second motion for new trial, the Michigan Supreme Court remanded the case to the trial court for a hearing on Petitioner's claim that he was denied effective assistance of counsel. *See People v. Kincade*, 436 Mich. 883; 461 N.W.2d 372 (1990). The trial court appointed counsel for Petitioner and held a hearing on January 23-24, 1991, and April 26, 1991. On the final day of the hearing, the trial court denied relief after concluding that Petitioner received effective representation. The Michigan Court of Appeals affirmed the trial court's decision, *see People v. Kincade*, No. 190068 (Mich. Ct. App. Nov. 21, 1997), and the Michigan Supreme Court denied leave to appeal on September 28, 1998, *see People v. Kincade*, 459 Mich. 869; 586 N.W.2d 89 (1998) (table).

Next, Petitioner filed a federal habeas corpus petition, which alleged (1) ineffective assistance of trial and appellate counsel, (2) prosecutorial misconduct during closing argument, and (3) denial of the right to poll the jurors following their verdict. This Court dismissed the petition without prejudice for failure to exhaust state remedies for the second and third claims. *See Kincade v. Stegall*, No. 99-CV-76350-DT (E.D. Mich. Jan. 23, 2001).

Petitioner then filed a motion for relief from judgment alleging ineffective assistance of trial and appellate counsel, prosecutorial misconduct during closing argument, and denial of the right to poll the jurors. The trial court denied Petitioner's motion. It found no merit in Petitioner's ineffectiveness claims, and it stated that Petitioner could have raised his claim about

polling the jury on appeal from his convictions. The Michigan Court of Appeals denied leave to appeal the trial court's decision for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Kincade*, No. 248330 (Mich. Ct. App. Sept. 4, 2003). On April 30, 2004, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Kincade*, 470 Mich. 853; 679 N.W.2d 74 (2004) (table).

Petitioner initiated this action by filing a habeas corpus petition on July 19, 2004. The habeas petition raised four claims: (1) ineffective assistance of trial counsel, (2) prosecutorial misconduct, (3) denial of the right to poll the jury, and (4) ineffective assistance of appellate counsel. Respondent moved for summary judgment on the ground that the habeas petition was barred by the one-year statute of limitations. The Court denied the motion and requested an answer on the merits of Petitioner's claims. In the meantime, Petitioner filed an amended habeas petition, which does not include the claim about being denied the right to poll the jury. The Court deems that claim abandoned.

Respondent argues in an answer to the habeas petition that Petitioner's claims are procedurally defaulted, among other things. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Because it is more efficient to address the merits of Petitioner's claims than to analyze them under the doctrine of procedural default, the Court will proceed to adjudicate Petitioner's claims under the following standard of review.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. "Ultimately, AEDPA's highly deferential standard requires that this court give the state-court decision 'the benefit of the doubt.'" *Slagle v. Bagley*, 457 F.3d 501, 514 (6th Cir. 2006) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

### III. Discussion

## A. Trial Counsel

The first habeas claim alleges ineffective assistance of trial counsel. Petitioner contends that his trial attorney failed to: (1) inform him that the Michigan sentencing guidelines would apply if he pleaded guilty to a reduced charge of second-degree murder; (2) share the fruits of discovery with him; (3) interview prosecution witnesses and subpoena favorable defense witnesses; (4) object to certain improper testimonial evidence presented by the prosecutor; (5) adequately prepare him for trial; (6) conduct efficient examinations of both prosecution and defense witnesses; (7) object to the prosecutor's repeated misstatement of the law concerning self defense; and (8) ask for permission to poll the jurors or object to the trial court's discharge of the jurors without first providing the defense with an opportunity to poll them. Petitioner further alleges that the cumulative effect of his attorney's deficient performance deprived him of a fair trial.

The test for ineffective assistance of trial counsel has two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

A deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must

show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### 1. Failure to Advise Petitioner that the Sentencing Guidelines Applied

Petitioner alleges that his trial attorney failed to inform him that the Michigan sentencing guidelines would apply if he pleaded guilty to a reduced charge of second-degree murder. Petitioner says that he was prejudiced by his attorney's deficient performance because a conviction of second-degree murder would have resulted, at worst, in a sentence of life imprisonment with the possibility of parole.

Petitioner's trial attorney testified at the evidentiary hearing that he was not sure whether the sentencing guidelines applied at the time. Although state case law indicates that the state sentencing guidelines were in effect at the time, *see People v. James*, 142 Mich. App. 19, 20-21; 368 N.W.2d 892, 893 (1985), a sentencing judge could exercise discretion and "depart from the guidelines to develop a sentence best suited for the case before him or her." *Id.*, 142 Mich. App. at 21; 368 N.W.2d at 893. Thus, there was no guarantee that Petitioner would have been sentenced within the guidelines. Furthermore, defense counsel opined at the evidentiary hearing that Petitioner had not been interested in pleading guilty. (Tr. Jan. 23, 1991, at 29; Tr. Apr. 26, 1991, at 13.) Although Petitioner testified at the evidentiary hearing that he would have pleaded guilty to second-degree murder, he maintained that he was not guilty of murder. (Tr. Apr. 26, 1991, at 25-26.)

In addition, on the first day of trial, Petitioner rejected an opportunity to plead guilty to second-degree murder and the two other pending charges. There was no sentencing agreement,

but defense counsel estimated that Petitioner would receive anywhere from a year and one day to life imprisonment for the murder. The prosecutor countered by saying that Petitioner could receive anywhere from a microsecond to life imprisonment. The prosecutor also intimated that Petitioner might receive special consideration if he provided helpful information to the police. Petitioner initially stated that he wanted to take advantage of the offer, but when the guilty plea form was handed to him for his signature, he stated, "I can't do this." (Tr. July 22, 1985, at 4-6.) The trial court then proceeded to pick a jury.

Petitioner has not shown that his attorney's failure to advise him of the state sentencing guidelines affected his decision regarding the offer to plead guilty to second-degree murder. Thus, he has failed to demonstrate ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985).

## 2. Sharing the Fruits of Discovery

Petitioner alleges next that his trial attorney did not review the pretrial discovery packet and did not share the fruits of discovery with him. Defense counsel stated at the evidentiary hearing that he was prepared for trial, that he possessed the discovery materials long before trial, and that he probably kept Petitioner informed of discovery. (Tr. Jan. 23, 1991, at 7, 18-19). Petitioner had no constitutional right to a personal copy of discovery materials while he was represented by counsel. *Williams v. Dark*, 844 F. Supp. 210, 213-14 (E.D. Pa. 1993), *aff'd*, 19 F.3d 645 (3d Cir. 1994) (table). Petitioner nevertheless alleges that the discovery packet included Terry Pride's statement, which revealed the names of three *res gestae* witnesses who were never interviewed by the police or produced at trial.

None of the witnesses who testified, including Petitioner, mentioned any eyewitnesses to

the shooting other than Glenn Thomas and Carl Branham, and it is unclear how Terry Pride would have known about *res gestae* witnesses. His mother intimated at trial that Pride slept through the shooting, (Tr. July 22, 1985, at 72 and 74), and defense counsel waived Mr. Pride's appearance at trial because he was convinced, after hearing Pride speak with the prosecutor, that Pride knew nothing about the shooting. (*Id*. at 58-59.)

Petitioner alleges that the discovery packet also included the evidence technician's report, which should have alerted defense counsel that it was physically impossible for Carl Branham to have seen Petitioner exit an alley immediately before the shooting. Defense counsel admitted at the evidentiary hearing that he did not go to the scene of the crime. The location of the alley, however, was insignificant. It was undisputed that Petitioner and Glenn Thomas went through the alley before Petitioner shot Kevin Taylor. The only critical issue was whether Petitioner had a reasonable and honest belief that his life was in danger. The location of the alley did not shed any light on that issue. In defense counsel's words, "[H]e killed somebody. The terrain, the topography, the geography did not have a bearing on where the bullet came from or where it went." (Tr. Jan. 23, 1991, at 22.)

Petitioner alleges that the discovery packet also contained information about witnesses who could have testified that the decedent (1) was an aggressive individual who had been drinking alcohol and smoking marijuana throughout the day in question, (2) was involved in a confrontation with a person earlier in the day, and (3) threatened to slap Petitioner on the face. Petitioner asserts that this evidence would have supported his theory of imperfect self defense. The evidence admitted at trial, however, included testimony about the decedent's drinking problem and argument with an unknown person before the shooting. Although there was no

evidence that the decedent had threatened to slap Petitioner, this evidence would not have helped the defense because eyewitnesses claimed that the decedent did nothing threatening to Petitioner immediately before the shooting.  The Court concludes that defense counsel's alleged failure to review the discovery packet and to share the packet with Petitioner did not amount to ineffective assistance.

### 3. Failure to Interview or Produce Witnesses

Petitioner alleges that his attorney failed to interview witnesses and neglected to subpoena favorable defense witnesses.

### a. Prosecution Witnesses

Petitioner contends that his attorney's cross examination of prosecution witnesses was deficient due to the attorney's failure to interview prosecution witnesses before trial.  Petitioner asserts that his attorney should have:

- asked Norsina Pierce about the victim's reputation for "messing over money and dope;"

- corrected Ms. Pierce's testimony regarding the location of the alley in question;

- questioned Pearlanna Jenkins about the decedent's statement that he intended to slap Petitioner on the face;

- asked Carl Branham about the decedent's verbal and physical confrontation with another person on the day of the shooting;

- questioned Mr. Branham about the amount of drugs and alcohol the two men had consumed that day; and

- pointed out Glen Thomas's prior inconsistent statement that, when he

accompanied Petitioner, he thought that Petitioner was going to check on somebody.[1]

Defense counsel was not deficient for failing to elicit this information, because the information would not have helped the defense. Petitioner admitted that he took a gun from Fred Blakely, obtained information about the direction in which the two victims went, and then went in search of the victims. The two eyewitnesses to the shooting testified that Kevin Taylor was not armed, that he did not reach for anything, and that he did not threaten Petitioner immediately before the shooting. Taylor's prior conduct or comments might have demonstrated that Petitioner had a basis for being cautious around Taylor, but the evidence would not have served to justify Petitioner's conduct of seeking out Taylor and shooting him.

To his credit, defense counsel elicited important information on cross-examination of prosecution witnesses. When cross-examining accomplice Glenn Thomas, defense counsel brought out the fact that Mr. Thomas had told the police he was not positive that Fred Blakely handed a gun to Petitioner before the shooting. (Tr. July 22, 1985, at 117.) Mr. Thomas also admitted on cross-examination by defense counsel that he did not tell the police that Petitioner told Blakely to get rid of the gun after the shooting. (*Id*. at 118-19.)[2]

On cross-examination of Carl Branham, defense counsel elicited testimony that Branham did not call the police after the shooting, despite the fact that the decedent was his friend.

---

[1] At trial, Mr. Thomas testified that he thought Petitioner intended to rob somebody. (Tr. July 22, 1985, at 102-03.)

[2] During direct examination, Mr. Thomas stated that Petitioner acquired a gun from Blakely and that Petitioner returned the gun to Blakely after the shooting and told Blakely to get rid of it. (Tr. July 23, 1985, at 99, 106.)

Defense counsel also elicited testimony that Branham (1) failed to tell the police he was trying to buy narcotics or get in the narcotics business shortly before the shooting and (2) failed to appear at Petitioner's preliminary examination even though he knew Petitioner was in jail at the time. (Tr. July 22, 1985, at 148, 165-66.) On cross-examination of Police Officer Isaiah Smith, defense counsel elicited testimony that Glenn Thomas was most definitely minimizing his involvement in the shooting.

Petitioner's appellate attorney did not think there was much more that trial counsel could have done, given Petitioner's admission that he shot the decedent and the eyewitnesses' testimony that the decedent was murdered. (Tr. Jan. 24, 1991, at 17-18.) The Court agrees. Petitioner has failed to show that his attorney's pretrial investigation and cross examination of prosecution witnesses was inadequate.

### b. Defense Witnesses

Petitioner alleges that his attorney neglected to subpoena defense witnesses, who would have supported the defense theory.

### i. Evidence of the Decedent's Threat

Defense counsel testified at the evidentiary hearing that he talked to a few people, but the people were unwilling to testify in Petitioner's behalf. (Tr. Jan. 23, 1991, at 21.) Petitioner nevertheless claims that Sandra Kincade and Willie Harbin could have testified that the decedent threatened him earlier in the day. Ms. Kincade, however, testified at the evidentiary hearing that there was nothing she could have said at trial to help Petitioner (Tr. Jan. 24, 1991, at 54), and Petitioner admitted at the hearing that Mr. Harbin knew nothing about whether the decedent had

previously tried to harm Petitioner.  (Tr. Apr. 26, 1991, at 18-20.)

Furthermore, testimony regarding the decedent's assaultive personality or prior threat toward Petitioner would not have helped Petitioner, because self defense, is justifiable only "if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v. Heflin,* 434 Mich. 482, 502; 456 N.W.2d 10, 18 (1990).  There was no evidence that Petitioner was in imminent danger at the time of the shooting, and a preemptive strike is not a form of self-defense.  *People v. Truong*, 218 Mich. App. 325, 337-338; 553 N.W.2d 692, 699 (1996).

### ii.  Refuting Glenn Thomas's Incriminating Remark

Petitioner asserts that Sandra Kincade and Willie Harbin could have refuted Glenn Thomas's testimony that, on the Thanksgiving Day which followed the shooting, Petitioner said he shot the wrong person and would not get paid for it.  Mr. Thomas did not say what time that conversation occurred or even that it occurred during the Thanksgiving Day dinner, (Tr. July 22, at 107-08), and Willie Harbin testified at the evidentiary hearing that Petitioner and Glenn Thomas left for a minute while Mr. Harbin got some furniture ready for a move.  (Tr. Jan. 24, 1991, at 59-63.)  Had Mr. Harbin testified similarly at trial, the jury could have concluded that Petitioner made his incriminating remark to Mr. Thomas in Mr. Harbin's absence.  As the trial court recognized, "folks were coming and going," and Mr. Harbin was "in no position to know whether somebody could have made a statement or not.  He just didn't hear anything."  (*Id*. at 69.)  Furthermore, defense counsel did not think Mr. Harbin would have been a valuable or reliable witness, because Petitioner had implicated him in an unrelated murder.  (Tr. Jan. 23,

1991, at 10, 32-33; Apr. 26, 1991, at 5.)[3]  The Court concludes that defense counsel's failure to call Sandra Kincade and Willie Harbin as witnesses did not prejudice the defense.

### 4.  Failure to Object to Certain Testimonial Evidence

### a.  The Accomplice's Guilty Plea

Petitioner states that his attorney should have objected to the admission of Glenn Thomas's guilty plea to a lesser charge arising out of the same shooting.  Petitioner maintains that the prosecutor went beyond mere disclosure of the plea bargain and used Thomas's plea agreement as substantive evidence of Petitioner's guilt by associating Petitioner with Thomas.

"Potential prejudice" exists when a co-defendant pleads guilty in the presence of a defendant's jury.  *Hudson v. North Carolina,* 363 U.S. 697, 702 (1960).  Although Glenn Thomas did not plead guilty in front of Petitioner's jury,  his plea agreement was entered into evidence without objection from defense counsel.  (Tr. July 22, 1985, at 95-96 and 172-73.)

> Generally, the guilty plea or conviction of a co-defendant . . . is not admissible at trial, and such guilty pleas and convictions are never admissible as substantive evidence of the defendant's guilt.  However, guilty pleas and convictions may be introduced into evidence if the . . . co-defendant testifies at trial, so that the factfinder will have appropriate facts on hand to assess the witness's credibility.  When a guilty plea or conviction is introduced into evidence, the . . . court is required to give a cautionary instruction to the effect that the jury may use the conviction or guilty plea only to determine the testifying witness's credibility.

*United States v. Sanders*, 95 F.3d 449, 454 (6th Cir. 1996) (internal citations omitted).

---

[3]  Harbin denied having killed anyone (Tr. Jan. 24, 1991, at 65), and Petitioner claimed at the evidentiary hearing that he concocted allegations about Harbin killing someone (Tr. Apr. 26, 1991, at 21).

The prosecutor emphasized that Glenn Thomas would go to prison for five to ten years regardless of what Petitioner's jury decided to do. The prosecutor also argued that Mr. Thomas would have taken advantage of a self-defense theory and not pleaded guilty if he thought that Petitioner had a valid claim of self defense. (Tr. July 22, 1985, at 66-67; Tr. July 23, 1985, at 228-29 and 256.) Although the trial court failed to instruct the jurors not to consider Thomas's guilty plea as evidence of Petitioner's guilt, the prosecutor's argument merely invited the jury to assess Mr. Thomas's credibility as a witness based on Thomas's acceptance of responsibility and readiness to serve a substantial prison term. Even if the prosecutor's remarks amounted to improper use of Thomas's guilty plea, it was reasonable trial strategy for defense counsel to focus on other issues instead of objecting.

Moreover, it is apparent that defense counsel's allegedly deficient performance did not prejudice the defense. Petitioner admitted shooting Kevin Taylor, and the only issue was whether the shooting was done in self defense. Glenn Thomas's testimony that Petitioner said he shot the wrong person and would not get paid for it was compelling evidence that the shooting was the result of a contract to shoot Taylor, not self defense.

Furthermore, Carl Branham testified that he (Branham) was not armed and that, as far as he could tell, the decedent was not armed. Branham also claimed that the decedent did not threaten Petitioner and that the decedent's hands were by his side before the shooting. According to Branham, neither he nor the decedent made a movement toward their waistbands before the shooting. The police did not find a gun near the decedent's body shortly after the shooting, and although Petitioner claimed that he took the decedent's gun with him, he admitted that he did not preserve the gun to determine whether the decedent's fingerprints appeared on it.

15

Petitioner has not shown a reasonable probability that, but for his attorney's failure to object to the prosecutor's alleged use of Glenn Thomas's guilty plea as substantive evidence, the result of the trial would have been different.

### b.  Vouching and Bolstering

Petitioner alleges that his attorney should have objected to the prosecutor's attempt to bolster Glenn Thomas's testimony.  This claim lacks merit because defense counsel did object to the prosecutor's conduct.  The prosecutor called Police Officer Isaiah Smith to the stand after Glenn Thomas testified.  When the prosecutor asked Officer Smith whether Glenn Thomas's pretrial statements to the officer were consistent with his trial testimony, defense counsel objected on the ground that the officer could not characterize another witness's credibility.  Counsel stated that witness credibility was a function of the jury.  The prosecutor then asked Officer Smith, "Is there anything he [Glenn Thomas] told you that wasn't testified to?"  Defense counsel objected a second time on the same ground, and the trial court responded to the objection by saying, "I don't know why we're going through this."  The prosecutor then offered to rephrase his question, and he proceeded to ask a different question.  (Tr. July 22, 1985, at 167-68.)  Petitioner's claim has no basis in fact.

### 5.  Direct Examination of Petitioner

Petitioner alleges that his attorney did not adequately prepare him for trial and did not conduct an effective or thorough direct examination of him.  Petitioner asserts that his attorney should have done more to bring out his (Petitioner's) state of mind at the time of the shooting and his claim of self defense.

Defense counsel established through direct examination of Petitioner that Kevin Taylor owed Petitioner money for drugs and that Petitioner thought Taylor possessed money and a pistol on the day in question. Petitioner testified in response to defense counsel's questions that Taylor's hand came up in front of him, that he thought Taylor was reaching for a gun, and that he shot Taylor because he thought Taylor intended to shoot him. Petitioner denied telling Glenn Thomas that he shot the wrong man. (Tr. July 24, 1985, at 76-88.) Petitioner has failed to demonstrate that he was unprepared to testify and that his attorney's direct examination of him was inadequate.

### 6. The Prosecutor's Alleged Misstatement of the Law

Petitioner asserts that his attorney should have objected to the prosecutor's repeated misstatements of the law on self defense. The prosecutor said that self defense was not available because Petitioner was armed and he was the initial aggressor in a deadly confrontation. Although defense counsel did not object when the prosecutor made these remarks during his opening statement, he did object to the prosecutor's comments about self defense during closing arguments. (Tr. July 23, 1985, at 226-27.) Even if defense counsel's performance was deficient, it did not prejudice the defense, because the trial court subsequently instructed the jury on the law of self defense and explained that the attorneys' statements, arguments, and questions were not evidence. (*Id*. at 264-65.) Petitioner's claim lacks merit.

### 7. Polling the Jury

Petitioner alleges that his attorney should have either asked for permission to poll the jurors or objected when the trial court discharged the jurors without providing defense counsel with an opportunity to poll them. Petitioner claims that the failure to poll the jury abrogated his

right to a unanimous jury verdict. According to Petitioner, polling would have revealed that the verdict was not unanimous and, as a result, the outcome of the case would have been different or a mistrial would have been declared.

"That, generally, the right to poll a jury exists, may be conceded. Its object is to ascertain for a certainty that each of the jurors approves of the verdict as returned; that no one has been coerced or induced to sign a verdict to which he does not fully assent." *Humphries v. District of Columbia*, 174 U.S. 190, 194 (1899). However, the failure to poll a jury is not fatal to the judgment and does not render the verdict a nullity. *Id*. at 194-96.

Furthermore, it is mere speculation that the jury verdict was not unanimous. The jurors did not indicate that they were unable to reach a verdict, and the foreperson announced the verdict after only two hours of deliberations. Then, at the trial court's request, the jurors stood, raised their right hands, and affirmed their verdict. (*Id*. at 288.) Defense counsel's failure to object to the proceeding or to ask for permission to poll the jury did not amount to ineffective assistance.

### 8. Cumulative Effect of Errors

Petitioner states that the cumulative effect of his trial attorney's errors deprived him of a fair trial. None of Petitioner's individual claims regarding trial counsel warrant habeas relief, and constitutional errors that would not individually support habeas relief cannot be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied*, __ U.S. __, 127 S. Ct. 557 (2006). Consequently, Petitioner is not entitled to habeas relief on the ground that his attorney's errors, when combined, require reversal of his convictions.

## B.  The Prosecutor

Petitioner alleges that the prosecutor misstated the law on self defense during closing arguments by stating that self defense was not a valid defense because Petitioner had been armed and was the initial aggressor in the deadly confrontation.  Petitioner argues that he was entitled to claim self defense, despite being armed and the initial aggressor, because he honestly believed that the victim was reaching for a weapon and that his own life was in imminent danger.

### 1.  Legal Framework

To prevail on a claim of prosecutorial misconduct, Petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or was sufficiently prejudicial and infected the trial with such unfairness as to violate the right to due process.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 643 (1974).  Courts must ask first whether the prosecutor's conduct or remarks were improper.  *Slagle,* 457 F.3d at 516.  If the answer is in the affirmative,

> the court considers four factors to decide whether the improper acts were
> sufficiently flagrant to warrant reversal:  (1) whether the evidence against the
> defendant was strong, (2) whether the conduct of the prosecution tended to
> mislead the jury or prejudice the defendant; (3) whether the conduct or remarks
> were isolated or extensive; and (4) whether the remarks were made deliberately or
> accidentally.

*Id*.

### 2.  Application to Imperfect Self Defense

"[T]he killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm."  *Heflin,* 434 Mich at 502; 456 N.W.2d at 18.

> [T]he defense is not available when a defendant is the aggressor unless he
> withdraws from any further encounter with the victim and communicates such

withdrawal to the victim.

    . . . .

    Imperfect self-defense is a qualified defense that can mitigate second-degree murder to voluntary manslaughter. *People v. Butler,* 193 Mich. App. 63, 67; 483 N.W.2d 430 (1992). Where imperfect self-defense is applicable, it serves as a method of negating the element of malice in a murder charge. *Heflin, supra,* 434 Mich. at 509; 456 N.W.2d 10. Although the Michigan Supreme Court has not yet considered the viability of the theory of imperfect self-defense, panels of [the Michigan Court of Appeals] have recognized the doctrine where a defendant would have been entitled to invoke the theory of self-defense had he not been the initial aggressor. *Heflin, supra; Butler, supra; People v. Amos,* 163 Mich. App. 50, 57; 414 N.W.2d 147 (1987).

*People v. Kemp*, 202 Mich. App. 318, 323; 508 N.W.2d 184, 187 (1993).

    The prosecutor stated that "a person who begins an assault upon another with deadly force or with a deadly or dangerous weapon cannot claim the right of self-defense unless he has withdrawn from the fight in good faith and clearly informed the other person of his desire for peace and an end to the fight." (Tr. July 23, 1985, at 226-27.) The trial court used the same words in its charge to the jurors and went on to say: "If the other person then continues the assault or resumes it at a later time the defendant would have the same right of self defense as any other person, and he was justified in using such force to save himself from imminent bodily harm." (*Id*. at 276). Petitioner did not object to the trial court's instructions, and he has not challenged them here. The Court therefore finds that the prosecutor's explanation of self defense, even if incorrect, could not have misled the jury or prejudiced the defense.

    Furthermore, contrary to what Petitioner says, the prosecutor did not encourage the jury to disregard the law given to them by the trial court. The prosecutor specifically urged the jurors to listen to the trial court's jury instructions. (*Id*. at 227-28.) The trial court subsequently explained to the jurors that it was the court's duty to instruct the jurors on the law and that it was the jurors' duty to accept the law as the court gave it to them. (Tr. July 23, 1985, at 261 and 264-

65.)

The prosecutor also did not deprive Petitioner of his only defense.  The prosecutor was merely arguing his theory of the case, which he was entitled to do.  In fact, he had the burden of disproving the defense theory of self defense.  *People v. Jackson*, 390 Mich. 621, 626; 212 N.W.2d 918, 920 (1973) (quoting *People v. Stallworth*, 364 Mich. 528, 535; 111 N.W.2d 742, 746 (1961)).  The Court concludes that the prosecutor's comments were not improper.

## C.  Appellate Counsel

Petitioner's third and final claim alleges ineffective assistance of appellate counsel.  The *Strickland* standard, which is used to evaluate a trial attorney's performance, also is used to evaluate an appellate attorney's performance.  *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004).  Thus, Petitioner must show that appellate counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Id.*

### 1.  Abandonment of Claim

Petitioner asserts that his first appellate attorney abandoned the issue of ineffective assistance of trial counsel on direct appeal.  The attorney was granted a remand for the purpose of filing a motion for new trial and seeking an evidentiary hearing on a claim of ineffective assistance of trial counsel.  However, the attorney did not file a motion for new trial, and he did not raise a claim about trial counsel in his appellate brief.  The attorney testified at the evidentiary hearing that he thought trial counsel did a superior job of presenting the defense and that a claim of ineffective assistance of trial counsel would have been frivolous.

Appellate counsel also testified that Petitioner agreed to waive the claim about trial counsel after being told that it was not a viable issue and that it would detract from the issue

actually raised. (Tr. Jan. 24, 1991, at 10, 15, 19-25.) Petitioner acknowledges that he acquiesced in his attorney's abandonment of the issue. He nevertheless asserts that his waiver was invalid because he did not realize that the court of appeals had granted a remand to enable him to file a motion for new trial.

Even assuming that Petitioner was unaware of the state appellate court's remand, the trial court ultimately considered Petitioner's claims about trial counsel and afforded Petitioner an evidentiary hearing on the claims. The trial court determined that Petitioner's trial attorney was not ineffective, and the Michigan Court of Appeals agreed.

Petitioner's strongest claim about trial counsel is the allegation that counsel did not object to the prosecution's use of Glenn Thomas's guilty plea as substantive evidence. Petitioner raised the underlying claim about Thomas's guilty plea on direct review. Two of the three judges who considered his case determined that the prosecutor did not improperly use the evidence. The judges in all likelihood would have found no merit in the contention that defense counsel should have objected to the evidence. Therefore, Petitioner has failed to show that he was prejudiced by his appellate attorney's failure to assert a claim about trial counsel.

## 2. Failure to Raise Issues

Petitioner alleges that his appellate attorneys failed to raise meritorious issues on direct and collateral appeal. An appellate attorney need not raise every nonfrivolous argument on appeal, *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983), and

> it is difficult to demonstrate that an appellate attorney has violated the performance prong [of the *Strickland* test] where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 285, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented

'was clearly stronger than issues that counsel did present.' *Id.* at 289.

*Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). "Counsel's failure to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005) (citing *Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001)), *cert. denied*, __ U.S. __, 126 S. Ct. 1032 (2006).

Petitioner's appellate counsel was an experienced attorney who had handled at least 400 appeals before he represented Petitioner. He claimed that he looked for every viable issue and that the only meritorious issue was the one he raised on direct appeal. Petitioner's current claims about trial counsel and the prosecutor are not clearly stronger than the claim raised on appeal, which persuaded one of three appellate judges to vote in his favor.

There is not a reasonable probability that inclusion of the pending issues on direct appeal would have changed the result of the proceeding. The Court's "inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer*, 264 F.3d at 676.

## IV. Conclusion

The state court decisions were not contrary to, or unreasonable applications of, Supreme Court precedent. Therefore Petitioner's application for a writ of habeas corpus is DENIED.

Dated: May 9, 2007

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 9, 2007, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk